**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karla Kretsch, et al., | No. CV-23-00411-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| John Barton, et al., | |
| Defendants. | |

Plaintiff Karla Kretsch alleges Defendant John Barton,[1] among other offenses, defrauded her into making several investments between 2010 and 2012. (Doc. 11, "SAC"). Defendants seek dismissal of the Second Amended Complaint (Doc. 12, "Mot."). As each count of the Complaint is deficient to state a claim, the Court will grant Defendant's Motion and dismiss the complaint without prejudice and with leave to amend.

## BACKGROUND

Plaintiff alleges the following facts in the Complaint. Between 2010 and 2012, Plaintiff Karla Kretsch made several investments with Guy Newman, a representative of investment banking firm GVC Capital and alleged agent of Defendant John Barton. SAC ¶¶ 14–15, 20–22, 27. In 2010, Plaintiff invested $100,000 in Creative Learning Corporation for what she was told would be a 20% stake in the company, but Plaintiff's

---

[1] Though Plaintiff's Complaint identifies multiple defendants and Defendants bring their Motion on behalf of both John and Susan Barton, Plaintiff references only Defendant John Barton's conduct in the Complaint. For the purposes of this Motion, the Court will use "Defendant" to refer to Defendant John Barton.

shares "never constituted a 20% owner stake." *Id.* at ¶¶ 23–34. Plaintiff then invested $75,000 in Vanguard Energy Corporation in 2011 after Newman gave her 10,000 shares in an unrelated transaction. *Id.* at ¶¶ 35–40. Later in 2011, Plaintiff invested $30,000 in Spectrum Resources Corporation, for which Defendant was President and Director, through Newman's solicitation. *Id.* at ¶¶ 41–53. Spectrum "thereafter went out of business" rendering Plaintiff's investment "worthless." *Id.* at ¶ 54. In 2012, Newman solicited Plaintiff to invest in Rockdale Resources Corporation, for which Defendant was a director and officer, characterizing the investment as "low risk." *Id.* at ¶¶ 55–66. Plaintiff invested $61,000 in Rockdale and another $50,000 in Spectrum. *Id.* at ¶ 67. In January 2014, Newman contacted Plaintiff to "take a look" at investing in General Cannabis Corporation, telling Plaintiff "maybe we will get out of this unscathed after all" while "concealing" his "history of failure and non-disclosure." *Id.* at ¶¶ 74–76.

Throughout the years, Defendant and Newman told Plaintiff she was "covered," "would be taken care of," and Defendant "would help her recover her losses." *Id.* at ¶¶ 113–15. Defendant, Newman, and Plaintiff engaged in settlement discussions which purportedly resulted in an agreement for Defendant and Newman to pay Plaintiff $500,000 in stock "to make her whole." *Id.* at ¶ 123. Defendant did not pay Plaintiff pursuant to the alleged agreement. On April 1, 2019, Defendant and Plaintiff executed a tolling agreement for "certain claims against [Defendant] arising out of the offer and sale of securities." *Id.* at ¶¶ 107–08.[2]

In 2020, Plaintiff initiated a Financial Industry Regulatory Authority ("FINRA") arbitration against Newman and GVC Capital, alleging Newman committed securities fraud, negligence, breach of fiduciary duty, constructive fraud, and negligent misrepresentation. *Id.* at ¶ 80. Plaintiff "prevailed on her claims against Newman and was

---

[2] Though not mentioned in the Complaint, the agreement expressly provides it does "not revive any Claim that [Plaintiff] had against [Defendant and Newman] that lapsed or was barred by any statute of limitation . . . before the Effective Date" of April 1, 2019. (Doc. 12-1 at 9–10). The Complaint incorporates the agreement and Plaintiff did not object to the authenticity of the copy of the agreement attached as Exhibit B to Defendant's Motion, so the Court may consider the document in deciding this motion. *See Rand v. Midland Nat'l Life Ins.*, 857 Fed. App'x 343, 346 (9th Cir. 2021).

awarded damages." *Id.* at ¶ 82.  During the arbitration, Plaintiff alleges she "first learned of the magnitude of Defendant Barton's fraud." *Id.* at ¶ 86.

## MOTION TO DISMISS

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" has not adequately shown the pleader is entitled to relief. *Id.* at 679. Although federal courts ruling on a motion to dismiss "must take all of the factual allegations in the complaint as true," they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

Plaintiff's Complaint alleges ten causes of action against Defendants: (1) Arizona securities fraud; (2) negligent misrepresentation; (3) control person liability; (4) constructive fraud; (5) civil conspiracy; (6) fraud; (7) aiding and abetting tortious conduct; (8) negligent infliction of emotional distress; (9) intentional infliction of emotional distress; and (10) breach of contract.

### A. Statute of Limitations and Tolling

Defendants' Motion first argues the applicable statutes of limitations bar Plaintiff's claims. *See* Mot. at 2–6. Plaintiff's claims have statutes of limitations ranging between two and three years.[3] Aside from her breach of contract claim, all of Plaintiff's claims arise

---

[3] Two-year statutes of limitation: Arizona Securities Act claims (A.R.S. §§ 44-2004); negligent misrepresentation (*Cavan v. Maron*, 182 F. Supp. 3d 954, 962 (D. Ariz. 2016)); breach of fiduciary duty (*Kisner v. Broome*, 2017 WL 6462245, *5 (Ariz. Ct. App. Dec. 19, 2017)); negligent infliction of emotional distress and intentional infliction of emotional distress (*Barba v. Seung Heun Lee*, 2010 WL 11515658, at *20–21 (D. Ariz. Aug. 25, 2010)).

Three-year statutes of limitation: fraud (*Cavan v. Maron*, 182 F. Supp. 3d 954, 962 (D.

from investments she made between 2010 and 2012. For these claims to be viable, they must have been viable when the parties executed the tolling agreement on April 1, 2019. If any of her claims expired before then, the statutes of limitations bar them.

Federal courts sitting in diversity apply state substantive law and federal procedural law. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Statutes of limitations are substantive law, *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011), so Arizona law governs. Arizona follows the discovery rule, under which "a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998) (citing *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.*, 898 P.2d 964, 968 (Ariz. 1995)). The discovery rule applies to all of Plaintiff's claims here. *See Gust*, 898 P.2d at 966–69 (contract and tort claims); A.R.S. § 44-2004(B) (statutory analog to discovery rule for Arizona securities fraud claims).

The discovery rule "does not permit a party to hide behind its ignorance when reasonable investigation would have alerted it to the claim." *ELM Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941 (Ariz. Ct. App. 2010). Plaintiffs are "charged with a duty to investigate with due diligence to discover the necessary facts." *Doe v. Roe*, 955 P.2d 951, 962 (Ariz. 1998). The "core question" in applying the discovery rule is "whether a reasonable person would have been on notice to investigate." *Walk v. Ring*, 44 P.3d 990, 992 (Ariz. 2002). To benefit from the discovery rule, a complaint must "demonstrate (1) the time and manner of discovery, *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Cavan v. Maron*, 182 F. Supp. 3d 954, 963 (D. Ariz. 2016) (emphasis in original).

Plaintiff argues she does not bear the burden of proving the discovery rule applies, citing the Third Circuit's statement that a court "may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required

---

Ariz. 2016)); constructive fraud (*Rindlisbacher v. Steinway & Sons Inc.*, 497 F.Supp.3d 479, 492 (D. Ariz. 2020)).

to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3rd Cir. 2014). But, as Defendants point out, this opinion is not binding on the Court. (Doc. 14, "Reply" at 1–2). Arizona case law clearly places the burden of establishing the discovery rule on the plaintiff on a motion to dismiss. *See, e.g.*, *Cavan*, 182 F. Supp. 3d at 962–63 ("The burden of establishing that the discovery rule applies to delay the statute of limitations rests on plaintiff."); *Anson v. American Motors Corp.*, 747 P.2d 581, 582 (Ariz. Ct. App. 1987) ("The affirmative defense of statute of limitations is properly raised in a motion to dismiss where it appears from the face of the complaint that the claim is barred. . . . The party opposing the motion then bears the burden of proving the statute has been tolled."); *Satamian v. Great Divide Ins. Co.*, No. 22-CV-375, 2023 WL 2250419, *2 (Ariz. Ct. App. Feb. 28, 2023) ("[P]laintiffs bear the burden of showing the discovery rule should delay the statute of limitations."). Plaintiff's claims initially appear barred by statutes of limitation on the face of the Complaint, with the relevant conduct occurring between seven and nine years before the parties executed the tolling agreement. Accordingly, Plaintiff must set forth enough facts in the Complaint to indicate the discovery rule applies to toll the statutes of limitations.

In *Cavan v. Maron*, the plaintiff claimed a watch he purchased for $2 million did not have the original dial as the seller represented. 182 F. Supp. 3d 954 (D. Ariz. 2016). Because "the allegations in the Complaint . . . indicate[d] that the watch was delivered" more than three years before the plaintiff filed the action, the court found the claims "would be barred without the benefit of the discovery rule." *Id.* at 963. Thus, the court held the plaintiff "has the burden of demonstrating that the discovery rule applies." *Id.* at 962–63. The plaintiff in *Cavan* claimed he did not become aware that the watch "may not have the original dial" until three years after the purchase. *Id.* at 958. After he informed the seller, the seller admitted he had switched the dial and promised to "take care of it" and replace the dial. *Id.* at 959. The seller did not do so, and the plaintiff sued. *Id.* But the court found the complaint's allegations were not sufficient to demonstrate the discovery rule applied, because the plaintiff did not "explain how [he] exercised reasonable diligence when he did

- 5 -

not obtain an independent expert evaluation of the watch until more than three years after he received the watch, particularly in light of his assertion that he has 'relatively limited experience.'" *Id.*

Plaintiff's Complaint on its face does not demonstrate the discovery rule applies. The allegations in the Complaint do not identify precisely when or how Plaintiff discovered her claims against Defendant. Plaintiff's Response to Defendant's Motion to Dismiss asserts Plaintiff first "became suspicious that there was fraudulent activity at play" during an April 14, 2017 phone call when Defendant "asked for a list of her damages to help [Plaintiff] recover her losses." (Doc. 13, "Resp." at 3).[4] This phone call is significant because it took place just under two years before the parties' tolling agreement and if this is when Plaintiff's claim accrued, her claims would be viable. But the Complaint does not make this assertion. The Complaint's only mention of the April 14, 2017 phone call are to simply state it occurred and the content of Plaintiff's and Defendant's discussion. *See* SAC ¶ 101 ("During an April 14, 2017 telephone conversation with Ms. Kretsch, Defendant Barton requested that Ms. Kretsch provide him with her damages, which she thereafter sent to Defendant Barton directly."), ¶ 115 ("As late as April 14, 2017, Defendant Barton advised Ms. Kretsch that he would help her recover her losses."). In fact, the Complaint alleges the April 14, 2017 conversation was just the latest example in a "consistent[]" series of similar conversations with Defendant and Newman "[t]hroughout the years." SAC ¶¶ 113–115. If the April 14, 2017 conversation was when Plaintiff discovered her claims, her Complaint does not so allege.

Although Plaintiff's Response does not argue her claims against Defendant accrued in connection with the FINRA arbitration, this is the closest Plaintiff comes to identifying the time and manner of discovery in the Complaint. Plaintiff alleges she discovered the

---

[4] Plaintiff's Response also asserts her "claims did not accrue prior to the execution of the tolling agreement because she believed that her fiduciaries were upholding their duties." Resp. at 7. Even setting aside Plaintiff's contradictory assertion earlier in the Response that the claims accrued in 2017, this makes little sense. The parties executed the tolling agreement as part of a settlement negotiation. Plaintiff cannot plausibly suggest the claims had not accrued while she was engaged in settlement negotiations for those same claims.

- 6 -

"extent" or "magnitude" of Defendant's deception and fraud during the FINRA arbitration. SAC ¶¶ 86, 110. Rather, the use of "extent" and "magnitude," along with Plaintiff's allegation she "would have pursued Defendant Barton . . . in the same proceeding" had he been subject to FINRA regulations indicate Plaintiff had knowledge of her claims against Defendant before the FINRA arbitration. SAC ¶¶ 81, 86, 110. The Complaint has thus failed to allege "the time and manner of discovery." *Cavan v. Maron*, 182 F. Supp. 3d 954, 963 (D. Ariz. 2016).

Even if Plaintiff had adequately alleged the time and manner of discovery, she has not sufficiently alleged her "inability to have made earlier discovery despite reasonable diligence." *Id.* In fact, the Complaint does not allege Plaintiff engaged in any diligence whatsoever. Plaintiff does not allege she expressed any concern with or inquired about the status of her investments, researched any of the companies she had invested in, or even asked why the promised "mail box money" never arrived. Presumably, Defendant's repeated assertions he would "make her whole" and that she was "covered" and "would be taken care of" were responses to inquiries or complaints from Plaintiff, but the Complaint is silent as to Plaintiff's involvement in these conversations. *See* SAC ¶¶ 113–114. In short, the Complaint contains no allegations Plaintiff exercised *any* diligence in discovering her claim, let alone the reasonable diligence required to avail herself of the discovery rule.

Plaintiff's allegations about Defendant's and Newman's "constant promises to make [Plaintiff] whole" or statements Plaintiff was "covered" or "would be taken care of" do not excuse her failure to exercise reasonable diligence in discovering her claim. SAC ¶¶ 113–116. Whether Defendants "subsequently promised to remedy their breach has no bearing on whether" Plaintiff knew about the "facts giving rise to her claim." *Lytikainen v. Schaffer's Bridal LLC*, 409 F. Supp. 3d 767, 777 (D. Ariz. 2019) (citing *Hall v. Romero*, 685 P.2d 757, 763 (Ariz. Ct. App. 1984) (holding the claim accrued even though the breaching party had "promised to perform in the future," because such future promises "did not eradicate the fact that . . . [the breaching party] had already broken its promise to

perform")). Further, the Complaint does not identify how the April 14, 2017 conversation was different than her earlier conversations with Defendant (aside from taking place just in time to perhaps maintain viable claims for the tolling agreement) or why those earlier conversations precluded her from discovering her claims.

Plaintiff has not set forth facts in the Complaint sufficient to allege the discovery rule applies to her claims. Accordingly, Defendants' Motion with respect to Counts One through Nine will be granted.

### B. Shotgun Pleading

Defendants' Motion next argues the Complaint is an improper "shotgun pleading." *See* Mot. at 6–10. Rule 8 requires a short and plain statement of the claim showing the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a). And Rule 10 requires a plaintiff to state "claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Defendants cite *Casavelli v. Johanson*, arguing the Complaint "contains multiple counts where each count adopts the allegations of all preceding counts" and "is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Mot. at 7 (quoting 20-CV-0497, 2020 WL 4732145, at *9 (D. Ariz. Aug. 14, 2020)). While the Complaint does resemble a shotgun pleading, it is "neither rambling nor confusing," *Facciola v. Greenberg Traurig, LLP*, 781 F. Supp. 2d 913, 920–21 (D. Ariz. 2011), and it is not "extremely difficult to identify" the Complaint's allegations of what Defendant did, Plaintiff's resulting injuries, and the theories of relief Plaintiff seeks to articulate, *Casavelli*, 2020 WL 4732145 at *10.

### C. Damages

In its final general argument attacking the Complaint, Defendants claim Plaintiff has failed to plead the required damages for her claims. *See* Mot. at 10. Plaintiff responds the Complaint alleges damages in each count. Resp. at 12–13. Defendants cite no authority supporting their argument. Because the Complaint alleges damages in each count and includes specific allegations of losses suffered by Plaintiff, *see, e.g.*, SAC ¶ 54 ("Ms.

Kretsch's investment was rendered worthless."), ¶ 132 ("Plaintiff's shares in CLC never constituted a 20% ownership stake, as she was previously told."), Plaintiff has adequately alleged damages.

\* \* \*

While the Court has found Counts One through Nine of the Complaint subject to dismissal because the statutes of limitation have expired, Plaintiff's Complaint has other deficiencies that the Court must address.

### D. Arizona Securities Fraud (Count One)

Plaintiff's first asserted cause of action alleges Defendants violated A.R.S. § 44-1991(A)(1) and (A)(2) in connection with her investments in Creative Learning Corporation and Spectrum Resources Corporation. SAC ¶¶ 125–39. A.R.S. § 44-1991(A)(1) prohibits anyone from employing "any device, scheme, or artifice to defraud" in connection with a securities transaction, while A.R.S. § 44-1991(A)(2) prohibits making "any untrue statement of material fact" or omitting "any material fact necessary" to make a statement "not misleading." To successfully state a § 1991(A) claim, a plaintiff "must set forth facts indicating that each defendant either made, participated in, or induced the security transaction at issue." *Allstate Life Ins. Co. v. Robert W. Baird & Co.*, 756 F. Supp. 2d 1113, 1157 (D. Ariz. 2010) (citing A.R.S. § 44-2001(A)). And a plaintiff bringing an action under § 44-1991(A)(1) must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"—knowingly or recklessly—in each alleged act or omission and "specify each alleged untrue statement or material omission and the reason or reasons why the statement or omission is misleading or the omission is material." A.R.S. § 44-2082; *see also Allstate*, 756 F. Supp. 2d at 1159 ("For claims arising under § 1991(A)(1), a claimant must allege the requisite state of mind with particularity."); *Facciola v. Greenberg Traurig, LLP*, 781 F. Supp. 2d 913, 921–22 (D. Ariz. 2011) (denying motion to dismiss on scienter grounds where the plaintiffs sufficiently alleged the defendants "acted knowingly or recklessly"). Further, "if an allegation regarding the statement or omission is made on information and belief, the

complaint shall state with particularity all facts on which that belief is formed." *Id.*

Defendants first argue Plaintiff has failed to plead the requisite scienter under A.R.S. § 44-1991(A)(1). Mot. at 11. In response, Plaintiff points to two specific paragraphs of the Complaint and cites to cases interpreting the federal Private Securities Litigation Reform Act ("PSLRA"), which she claims is illustrative, to assert the Complaint, taken as a whole, shows the requisite scienter. Resp. at 13–14. Defendants assert the PSLRA is not applicable since Plaintiff has not alleged any claims under federal securities law and that the two Complaint paragraphs Plaintiff cites only allege conduct on Newman's part. *See* Reply at 6–7; SAC ¶ 45 ("In April 2011, Newman solicited Ms. Kretsch to invest in Spectrum . . ."), ¶ 59 ("Newman, of course, thought of Ms. Kretsch to fund the shell company . . .").

Though Plaintiff cites no authority for her claim that the PSLRA is illustrative, it appears the scienter requirements of the two statutes are analogous. *Compare* 15 U.S.C. § 78u–4(b)(2) *with* A.R.S. § 44-2082(B). But even "assessing the allegations holistically," *see* Resp. at 13 (quoting *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008)), Plaintiff has failed to identify any allegations in the Complaint which specifically address Defendant's state of mind. Instead, Plaintiff seeks to impute Newman's scienter to Defendant. Plaintiff has not adequately alleged scienter and has not sufficiently stated a claim under A.R.S. § 44-1991(A)(1).

### E. Negligent Misrepresentation, Control Person Liability, Constructive Fraud, and Fraud (Counts Two, Three, Four, and Six)

Count Two alleges Defendant committed negligent misrepresentation by supplying "false information to Plaintiff regarding the true nature of the advice and services he offered to Plaintiff." SAC ¶¶ 140–45. Count Three alleges "Defendant is vicariously liable as a 'controlling person' for Newman's violations of Arizona securities laws." *Id.* at ¶ 147. Count Four alleges "Defendant committed constructive fraud by breaching his duty to make full disclosure to Plaintiff." *Id.* at ¶ 164. And Count Six alleges Defendant committed fraud against Plaintiff in connection with her investments. *Id.* at ¶¶ 183–192.

Aside from arguing the Court should dismiss these counts as time barred and improper "shotgun pleadings," *see* Mot. at 3, 8, Defendants do not address these claims. Thus, the Court will not address the merits of these claims.

### F. Civil Conspiracy (Count Five)

Count Five alleges "Defendant and Newman conspired to cause Newman to breach his fiduciary duty to Plaintiff." SAC ¶ 171.[5] "For a civil conspiracy to occur" under Arizona law, "two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 36 (Ariz. 2002) (quoting *Baker v. Stewart Title & Trust of Phoenix*, 5 P.3d 249, 256 (Ariz. Ct. App. 2000)). "When pleading a claim for civil conspiracy, a plaintiff must plead with particular specificity as to the manner in which a defendant joined in the conspiracy and how he participated in it." *Armstrong v. Reynolds*, 22 F.4th 1058, 1085 (9th Cir. 2022) (internal quotations omitted).

Defendants argue Plaintiff has not met the heightened pleading standard for conspiracy because she failed to "allege facts such as a specific time, place, or person involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." Mot. at 11–12 (internal quotations omitted). Plaintiff claims she has pled an agreement "with particular specificity as to the manner in which a defendant joined the conspiracy and how he participated in it." Resp. at 14 (quoting *Armstrong v. Reynolds*, 22 F4th 1058, 1085 (9th Cir. 2022)). The Court agrees. The Complaint specifically alleges Newman worked as Defendant's agent, the actions Newman took on Defendant's behalf, and how Defendant benefitted. This is sufficient to give Defendants "an idea of where to begin," *see* Mot. at 11, in responding. Plaintiff has sufficiently alleged an agreement between Defendant and Newman.

---

[5] Count Five also appears to include claims of conspiracy to commit fraud and knowingly make false statements of material fact. *See* SAC ¶¶ 173–74. Neither party addresses these claims, and the Court will not address them.

- 11 -

Defendants further argue Plaintiff has not adequately pled the underlying tort of breach of fiduciary duty because her assertion "that Newman owes her a fiduciary duty as her 'financial and/or investment advisor'" is conclusory and insufficient because Plaintiff did not allege any "peculiar reliance in the trustworthiness" of Newman. Mot. at 12. Plaintiff claims Newman "was a registered representative of GVC working as an investment advisor, making it almost impossible for him *not* to owe her a fiduciary duty." Resp. at 14 (emphasis in original). Plaintiff cites no authority for this claim.

There is no caselaw in Arizona stating financial advisors necessarily owe their clients a fiduciary duty. While a financial advisor *may* owe a fiduciary duty, Arizona courts only find such a duty where there is an "intimate and decades-long relationship of advice and confidence" between the parties. *In re Est. of Meinel*, No. 2 CA-CV 2016-0032, 2016 WL 6108408, at *3 (Ariz. Ct. App. Oct. 19, 2016) (citing *Stewart v. Phoenix Nat. Bank*, 64 P.2d 101, 104, 106–07) (Ariz. 1937)); *see also Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 335–37 (Ariz. Ct. App. 1996) (declining to find a fiduciary relationship between financial firm and client, finding "trust, confidence, and reliance, though necessary components, do not suffice to establish a fiduciary relationship"). In declining to find a fiduciary duty, one unpublished case from this District suggested a plaintiff may establish a fiduciary duty for a financial advisor by showing (1) the defendant acted as the plaintiff's financial advisor; and (2) the plaintiff relied on the defendant's financial advice. *See Mortensen v. Home Loan Ctr., Inc.*, No. 08-CV-1669, 2010 WL 3002109, at *6 (D. Ariz. July 29, 2010) (citing *McAlister v. Citibank*, 829 P.2d 1253, 1258 (Ariz. Ct. App. 1992)). But the case the district court cited does not support this proposition. The *McAlister* court summarized the holding of *Stewart v. Phoenix National Bank*—which found a fiduciary relationship where a bank "acted as the customer's financial advisor for many (twenty-three) years"—but declined to find a fiduciary duty where the plaintiff did not show the defendant acted as a financial advisor nor that he relied on the defendant's advice. 829 P.2d at 1258. Thus, a defendant acting as a financial advisor and a plaintiff's reliance on the defendant's advice are necessary to establish a

fiduciary relationship, but not sufficient. And Plaintiff has not alleged sufficient facts to support her claim that Newman owed her a fiduciary duty. Plaintiff has failed to state a claim for civil conspiracy.

### G. Aiding and Abetting Tortious Conduct (Count Seven)

Count Seven alleges Defendant aided and abetted Newman's tortious conduct. SAC ¶¶ 193–200. This count includes three separate aiding and abetting claims: (1) aiding and abetting negligence; (2) aiding and abetting breach of fiduciary duty; and (3) aiding and abetting negligent misrepresentation. *Id.* at ¶ 195. A claim for aiding and abetting tortious conduct under Arizona law requires: (i) the primary tortfeasor committed a tort causing injury to the plaintiff; (ii) the defendant knew the primary tortfeasor breached a duty; (iii) the defendant substantially assisted or encouraged the primary tortfeasor in breaching the duty; and (iv) a causal relationship between the defendant's assistance or encouragement and the primary tortfeasor's breach. *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 988 (Ariz. Ct. App. 2008).

Defendants correctly argue Plaintiff's claims of aiding and abetting negligence and negligent misrepresentation fail because Arizona does not recognize a claim for aiding and abetting negligence. Mot. at 13 (citing *Dube v. Likins*, 167 P.3d 93, 100 (Ariz. Ct. App. 2007)). Plaintiff does not challenge Defendants' interpretation of Arizona law. Thus, Plaintiff's claims for aiding and abetting negligence and aiding and abetting negligent misrepresentation fail.

Defendants further argue Plaintiff's aiding and abetting breach of fiduciary duty claim fails because Plaintiff has not sufficiently alleged Newman owed Plaintiff a fiduciary duty. Mot. at 13–14. The Court agrees. As discussed regarding Plaintiff's civil conspiracy claim, *see supra* Section F, Plaintiff has failed to sufficiently plead Newman owed her a fiduciary duty. Plaintiff has failed to state a claim for aiding and abetting tortious conduct.

### H. Negligent / Intentional Infliction of Emotional Distress (Counts Eight and Nine)

Count Eight alleges negligent infliction of emotional distress ("NIED").

SAC ¶¶ 201–06.  Under Arizona law, an NIED claim is available where (i) the plaintiff witnesses an injury to another person or (ii) the plaintiff suffers emotional distress from an event that endangered plaintiff but did not physically injure her.  *See Quinn v. Turner*, 745 P.2d 972, 973 (Ariz. Ct. App. 1987).  Plaintiff does not allege she witnessed an injury to another person, so her NIED claim falls into the latter category.  To state a direct NIED claim, a plaintiff must allege (i) the defendant was negligent; (ii) the defendant's negligence created an unreasonable risk of bodily harm to the plaintiff; (iii) the defendant's negligence caused the plaintiff emotional distress; and (iv) the plaintiff suffered physical injury or illness due to the emotional distress.  Rev. Ariz. Jury Instr. (Civ.) Negligence 9 (6th ed. 2018) (citing *Quinn*, 745 P.2d 972; Restatement (Second) of Torts §§ 436(2), 426A).

Count Nine alleges intentional infliction of emotional distress ("IIED").  SAC ¶¶ 207–12.  The elements of an IIED claim under Arizona law are: (i) the defendant's conduct was "extreme" or "outrageous;" (ii) the defendant intended to cause emotional distress or recklessly disregarded a "near certainty that such distress" would result from the conduct; and (iii) the conduct caused severe emotional distress.  *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987).  To be outrageous or extreme, conduct must go "beyond all possible bounds of decency" and be "regarded as atrocious and utterly intolerable in a civilized community."  *Id*. (citation omitted).  Examples of emotional distress held sufficiently "severe" include heart attack, premature birth of a dead baby, severe nervousness rendering the victim unable to perform her job, severe stress and anxiety requiring hospitalization, or stress resulting in permanent impairment of an existing medical condition.  *Wray v. Greenberg*, 646 F. Supp. 3d 1084, 1108 (D. Ariz. 2022) (citing *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 501 (Ariz. Ct. App. 1982)).

Defendants argue these claims fail because Plaintiff "merely recites the legal elements of each cause of action and claims they have been met," and Plaintiff does not sufficiently plead physical or emotional distress.  Mot. at 9–10.  Plaintiff does not respond to Defendant's arguments regarding her NIED and IIED claims.  While Plaintiff's failure

to respond constitutes abandonment, *see, e.g.*, *Doe v. Dickinson*, 615 F. Supp. 2d 1002, 1011 (D. Ariz. 2009), her claims fail for other reasons.

First, Plaintiff has not adequately pled an NIED claim. When the plaintiff does not witness injury to another person, an NIED claim requires the plaintiff to have been "within the zone of danger, i.e.—the defendant's negligence must have created an unreasonable risk of bodily harm" to the plaintiff. *Quinn v. Turner*, 745 P.2d 972, 974 (Ariz. Ct. App. 1987). Plaintiff does not make such an allegation. Rather, she simply alleges "Defendant's negligence created an unreasonable risk of injury to Plaintiff." SAC ¶ 203. The underlying subject of this cause of action is alleged fraud, not a risk of physical injury. And as Defendants argue, Plaintiff's Complaint merely recites the elements of the claim with no facts. SAC ¶¶ 201-06. These conclusory and unsupported allegations cannot sustain her claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff has not stated a claim for NIED.

Plaintiff has also failed to state a claim for IIED. Again, the Complaint simply recites the elements of the claim, rendering the claim subject to dismissal. SAC ¶¶ 207–212. In particular, Plaintiff fails to allege what conduct gives rise to her IIED claim, let alone why or how that conduct was "extreme" or "outrageous." Again, Plaintiff does not detail her purported "emotional distress" or how it manifested as severe enough to sustain an IIED claim. Plaintiff has not stated a claim for IIED.

### I. Breach of Contract (Count Ten)

Count Ten alleges breach of a settlement agreement between the parties under which Defendant and Newman agreed to pay Plaintiff $500,000 in stock. SAC ¶¶ 122–124, 213–222. Defendants argue no valid contract existed between the parties and attach a copy of the alleged agreement to their Motion. Mot. at 14.

A district court may consider extraneous documents on a motion to dismiss where "(1) the complaint refers to the document; (2) the document is central to the plaintiff's

claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Rand v. Midland Nat'l Life Ins.*, 857 Fed. App'x 343, 346 (9th Cir. 2021) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). The alleged contract consists of an email exchange between Mark Chester (representing Newman) and Justin Nelson (representing Plaintiff). (Doc. 12-1). The Complaint refers to this document, *see* SAC ¶¶ 122–124, 213–222, and the alleged contract appears central to Plaintiff's breach claim. Plaintiff does not dispute its authenticity in her Response to Defendants' Motion. *See generally* Resp. Thus, the Court will consider it.

Defendants argue no contract exists between the parties because Mr. Chester expressly stated he did not represent Defendant, so any agreement was only between Plaintiff and Newman. Mot. at 14–15. And even if Defendant was a party to the negotiations, Plaintiff did not legally accept Mr. Chester's offer, because her purported acceptance was conditional and changed material terms of the offer by requiring a tolling agreement and requesting further discussions about how to apportion the payment of stock. *Id.* Plaintiff does not respond to these arguments and instead points to the allegations in her complaint, asserting she has adequately pled: (i) a valid contract exists, (ii) Defendant breached the contract, (iii) resulting in damages to Plaintiff. Resp. at 15.

While Plaintiff's allegations might suffice to plead a breach of contract claim on their face, the alleged contract contradicts them. An offeree must unequivocally accept the offer to create a valid contract. *See Richards v. Simpson*, 531 P.2d 538, 540 (Ariz. 1975) ("To create mutual consent and therefore a contract, acceptance of the offer must be unequivocal."); *Ficalora v. Int'l Bus. Machines Corp.*, 124 F.3d 211 (9th Cir. 1997) ("Under settled principles of contract law, [the] September 17 letter was a counteroffer, not an acceptance, because it imposed additional conditions."); *Beretta v. Tucson Trap & Skeet Club*, No. 2 CA-CV 2007-0009, 2007 WL 5556383, at *2 (Ariz. Ct. App. Aug. 16, 2007) ("Mutual consent to a contract can only exist when acceptance of the offer is unequivocal."). Plaintiff's purported acceptance stated that she "would like to conditionally accept the counteroffer," required Defendant and Newman to execute a

- 16 -

tolling agreement, and invited further discussion of how to apportion the shares that Plaintiff would receive. (Doc. 12-1). This expressly conditional "acceptance" constitutes a counteroffer. And since Plaintiff has not alleged Defendant accepted this counteroffer, no valid contract exists. Thus, the Court will dismiss Count Ten of Plaintiff's Complaint.

In addition to dismissal of this count, Defendants request an order granting them their attorneys' fees and costs under A.R.S. §§ 12-341 and 12-341.01, which allow for fees awards to successful parties in contested contract actions. Defendants may renew this request, if appropriate, following final judgment in this case.

## CONCLUSION

Plaintiff has failed to adequately allege each of her ten claims against Defendants. Accordingly,

**IT IS ORDERED** Defendants' Motion to Dismiss (Doc. 12) is **GRANTED**. Plaintiff's Complaint (Doc. 11) is **DISMISSED WITH LEAVE TO AMEND.** If Plaintiff amends, she must file an amended complaint within fourteen days of this Order and Defendants shall respond to it by the deadline required by the Federal Rules of Civil Procedure. If Plaintiff does not amend, no later than fourteen days of this Order Plaintiff must file a statement setting forth that no amendment will be filed.

Dated this 6th day of March, 2024.

Honorable Roslyn O. Silver
Senior United States District Judge